FILED
United States Court of Appeals
Tenth Circuit

October 8, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GEORGE L. GRAGERT,

        Plaintiff-Appellant,

v.

ED LAKE, Director of Department of
Human Services; JOEL NICO GOMEZ,
Director of Oklahoma Health Care
Authority,

        Defendants-Appellees.

No. 12-6137
(D.C. No. 5:11-CV-00984-C)
(W.D. of Okla.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.


George Gragert appeals from the grant of summary judgment for defendants

Ed Lake and Joel Gomez, Oklahoma health care officials, in this action challenging

the denial of Medicaid benefits. After the district court granted summary judgment

to the defendants, we decided *Morris v. Okla. Dep't of Human Servs.*, 685 F.3d 925

(10th Cir. 2012), holding that, pursuant to 20 C.F.R. § 416.1201, illiquid assets can

be excluded in determining Medicaid eligibility. In light of *Morris*, we vacate the

---

[*]     This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court's order and remand for proceedings consistent with this order and judgment.

## I. Background

Gragert brought this action under 42 U.S.C. § 1983, claiming that the methodology used by the State to deny him benefits violated the Medicaid Act, 42 U.S.C. § 1396 *et seq.*, and associated federal regulations. The parties are familiar with the facts, so we set out only the few that are relevant to our analysis.

Gragert requires institutionalization for medical care. Before applying for Medicaid to cover his care, he and his wife sold a rental house they owned to their son for $28,800, with his wife receiving a promissory note for that amount plus interest. Given the Gragerts' remaining assets, George Gragert can qualify for Medicaid only if that note does not constitute a family financial "resource" included among the assets counted in determining whether an applicant and the community spouse exceed the financial threshold for Medicaid eligibility.

On cross motions for summary judgment, the district court granted summary judgment for defendants on the resource issue. The district court looked to the regulatory definition of "resource," which refers to cash, liquid assets, and property convertible to cash, 20 C.F.R. § 416.1201(a)(1), and pointed out that promissory notes are specifically listed as "[e]xamples of resources that are ordinarily liquid," *id.* § 416.1201(b). Stating that Gragert had not offered any evidence to rebut this regulatory presumption, the district court concluded that the note was a resource,

rendering Gragert ineligible for the requested benefits.  On appeal, Gragert contends he presented enough evidence to show that the note was not a resource, so he should have prevailed on the issue under controlling law.

## II.  Analysis

Actions challenging adverse Medicaid decisions as contrary to federal law are often brought under § 1983, as is the case here.  *See, e.g.*, *Morris*, 685 F.3d at 928; *Houghton ex rel. Houghton v. Reinertson*, 382 F.3d 1162, 1164 (10th Cir. 2004).  But § 1983 is not available to challenge every Medicaid decision; its availability turns on whether, under the relevant provision of Medicaid law, "Congress intended to confer individual rights upon a class of beneficiaries."  *Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1179 (10th Cir. 2009) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002)); *see also id.* at 1181-83; *Harris v. Owens*, 264 F.3d 1282, 1288 n.3 (10th Cir. 2001).

Gragert bases his cause of action on alleged violations of three Medicaid statutes, 42 U.S.C. §§ 1396a(a)(10)(C)(i)(III), 1396a(r)(2)(A), and 1396p(c)(1)(I).  But whether § 1983 is available for a challenge based on these Medicaid provisions has not been resolved in this circuit.  *See Lemmons v. Lake*, No. CIV-12-1075-C, 2013 WL 1187840, at *3 (W.D. Okla. Mar. 21, 2013) (concluding that all three Medicaid statutes on which Gragert relies may not support an action under § 1983).  The agency raised this issue below, but the district court did not reach it because the court disposed of this case on another ground, namely whether the promissory note is

a resource under Medicaid regulations.  Given this procedural posture, on remand, the district court may consider the parties' other grounds for summary judgment.

We now turn to the promissory note at issue here.

### A.  Medicaid Provisions

By passing the Medicare Catastrophic Coverage Act of 1988 (MCCA), Congress sought to protect community spouses from "pauperization" while also preventing financially secure couples from unnecessarily obtaining Medicaid assistance.  *Morris*, 685 F.3d at 929 (citing H.R. Rep. No. 100-105, pt. 2, at 65 (1987)); *see also Lopes v. Dep't of Soc. Servs.*, 696 F.3d 180, 188 (2d Cir. 2012). Congress directed that a couple's combined resources are counted in determining Medicaid eligibility for an institutionalized spouse, 42 U.S.C. § 1396r-5(c)(2)(A), but the income of the community spouse is not included, *id.* § 1396r-5(b)(1).  *See Morris*, 685 F.3d at 930.  Further, "a couple may convert joint resources—which may affect Medicaid eligibility—into income for the community spouse—which does not impact eligibility—by purchasing certain types of [income generating investments]."  *Id.* at 928; *see also Lopes*, 696 F.3d at 188 (holding nontransferable annuity for community spouse was not countable resource); *James v. Richman*, 547 F.3d 214, 218-19 (3d Cir. 2008) (same).

The MCCA directs that in determining Medicaid eligibility, state agencies must use criteria that are "'no more restrictive' than the eligibility requirements under the Supplemental Security Income (SSI) Act."  *Houghton*, 382 F.3d at 1170

- 4 -

(quoting 42 U.S.C. § 1396a(r)(2)(A)); *see also Lopes*, 696 F.3d at 182-83 (noting the same directive in 42 U.S.C. § 1396a(a)(10)(C)(i)); *James*, 547 F.3d at 218 (same). Thus, the SSI regulation that defines what constitutes a resource, 20 C.F.R. § 416.1201, properly guides the analysis here. *See Lopes*, 696 F.3d at 183; *James*, 547 F.3d at 218; *see also Morris*, 685 F.3d at 930, 932-33. Under that regulation, "[i]f the individual has the right, authority or power to liquidate the property . . . , it is considered a resource," but if not, "the property will not be considered a resource." 20 C.F.R. § 416.1201(a)(1). Property is "liquid" and thus a "resource" if it "can be converted to cash within 20 days." *Id.* § 416.1201(b).

In addition to its regulations, the Social Security Administration (SSA) has issued a Program Operations Manual System (POMS) "through which [it] further construes the statutes governing its operations." *Lopes*, 696 F.3d at 186 (internal quotation marks omitted; alteration incorporated). Consistent with 20 C.F.R. § 416.1201, the relevant POMS provision states that "assets of any kind are not resources if the individual does not have . . . the legal right, authority, or power to liquidate them." POMS § SI 01110.15 (effective April 18, 2011).[1]

---

[1] POMS "are not products of formal rulemaking" entitled to *Chevron* deference, but "they nevertheless warrant respect" under the broader *Skidmore* framework. *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385-86 (2003) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944)); *see United States v. Mead Corp.*, 533 U.S. 218, 226-27, 234-35 (2001) (discussing *Skidmore* and *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)); *see also James*, 547 F.3d at 218 n.2. And as interpretations of the SSA's own regulations, POMS are "controlling unless plainly erroneous or

(continued)

### B. *Promissory Note*

Gragert argues that the note is illiquid because it cannot be converted to cash.

The district court ruled against Gragert, saying,

> [T]he Court must determine if the note is a resource. . . .
> Paragraph (b) of [20 C.F.R. § 416.1201] notes that a
> promissory note is typically considered a resource. Here,
> Plaintiff has offered no evidence to contradict this
> presumption. Because the note creates a resource in an
> amount in excess of the eligibility threshold, Plaintiff is
> not eligible for Medicaid. With this determination, it is
> unnecessary to consider the remainder of Plaintiff's
> arguments.

App. 321.

But Gragert contends the promissory note itself is evidence that adequately

rebuts the regulatory presumption. He points out that the promissory note is not

convertible to cash because the note expressly provides that the lender, his wife, may

not "grant, bargain, sell, assign, convey or transfer this note or any payments

hereunder."[2] *Id.* at 283. In addition, before the district court, Gragert submitted an

expert's report which stated that the note could not "be sold on any secondary

---

inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997)
(internal quotation marks omitted); *see also Reutter ex rel. Reutter v. Barnhart*, 372
F.3d 946, 951 (8th Cir. 2004).

[2]     This provision does permit assignment "for estate planning purposes to a
revocable trust," but only where the lender is the settlor and the trust itself "may not
further grant, bargain, sell, assign, convey or transfer this note or any payments
hereunder in any way." App. 283. Defendants do not argue, nor do we find, that this
circumscribed exception to the prohibition on transfer has any effect on the analysis
here.

- 6 -

market" and thus had "no value in the hands of a third party or in the secondary market." *Id.* at 296. And the defendants offer no evidence to rebut this conclusion that the promissory note cannot be converted to cash.[3]

As we stated in *Morris*, 20 C.F.R. § 416.1201 provides the operable definition of a "resource"—*i.e.*, property that can be liquidated. The district court correctly observed that, under this regulation, promissory notes "are *ordinarily* liquid." *Id.* § 416.1201(b) (emphasis added). But that is because promissory notes are ordinarily transferable and hence convertible to cash. If a promissory note cannot be transferred, as appears to be the case here, then it is not convertible to cash and therefore not a resource. Indeed, POMS indicate that notes count as resources for eligibility purposes *unless* there is "evidence of a legal bar to the[ir] sale." POMS SI 01140.300 at D-1, D-3 (effective May 22, 2003).

The note at issue here—which expressly prohibits the lender from assigning, transferring, or selling it or any payments thereunder—differs from its ordinary counterpart in precisely this respect. Because the note here cannot be converted to

---

3 Instead, the agency offers an alternative basis for affirming the district court's decision. It contends that Gragert failed to submit any evidence at the *state administrative level* showing the note at issue was not a resource, so Gragert should have been barred from offering the expert's report to support his case in the district court. This contention is wrong if a private right of action stands under § 1983 (which we take no position on here), since there is no constitutional requirement that administrative hearing procedures be used at all, *Houghton*, 382 F.3d at 1167 n.3; *Roach v. Morse*, 440 F.3d 53, 56-58 (2d Cir. 2006), much less that an exclusive evidentiary record be developed administratively. And in any event, Gragert did submit to the state agency evidence showing that the note was not a resource—the note itself.

cash and thus is illiquid, under 20 C.F.R. § 416.1201, the note is not a resource. *Cf.*

*Roach v. Morse*, 440 F.3d 53, 59-60 (2d Cir. 2006) (stating that a non-assignable

informal loan is not a resource under this regulation and the related POMS).

Case law applying the convertible-to-cash rule to similar income-generating

financial agreements also supports this conclusion. For instance, in *Lopes* and

*James*, the Second and Third Circuits rejected the state agency's contention that non-

assignable annuities were countable resources rather than non-countable income,

holding that the contractual prohibition on transfers precluded their treatment as

resources under § 416.1201. *Lopes*, 696 F.3d at 184-88; *James*, 547 F.3d at 218-19.

Our own precedent is in accord. In *Morris*, we held that an annuity, which by

its own terms could not be transferred or sold, was mere income that did not count as

a resource for purposes of Medicaid eligibility—even though, we acknowledged, this

rule created a "loophole" in the Medicaid statutes. *Morris*, 685 F.3d at 928, 930,

932-33.[4] And at least one lower court has treated a nontransferable promissory note

in the same way. *See Lemmons*, 2013 WL 1187840, at \*4 (concluding a promissory

note is not convertible into cash within 20 days—and thus is not a resource per

---

[4] Our *Morris* decision did not go as far as *Lopes* and *James* in at least one
respect. We left open the question whether a nontransferable income-generating
agreement might still be treated as a resource if the income stream could be resold.
*See Morris*, 685 F.3d at 933 n.5. But we need not take a definitive position on the
matter here since the note at issue not only prohibits transfer but also expressly
prohibits the sale or transfer "of any payments [t]hereunder." App. 283.

§ 416.1201—because the note's terms prohibited either party from transferring the note or any of its payments in any way—just like the note here).

In sum, the ruling on summary judgment does not square with our subsequent decision in *Morris*, so we remand. But this decision does not preclude the district court from considering other issues previously raised below that could affect the outcome of this case—including, but not limited to, whether Gragert is asserting a right enforceable by § 1983.

## III.  Conclusion

The judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this order and judgment.[5]

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge

---

[5]    We grant the Motion To Take Judicial Notice of Development Not Before the District Court and/or To Supplement the Record.