# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-1880

_____

Mick Thomas Rodysill

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of the Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 20, 2013
Filed: March 21, 2014

_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Mick Rodysill appeals the district court's[1] judgment upholding the decision of the Commissioner of the Social Security Administration (the "Commissioner"). The

_____

[1]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

Commissioner determined that Rodysill was not entitled to waiver of recovery of overpaid disability benefits. Finding that substantial evidence supports the Commissioner's decision, we affirm.

## I. Background

Rodysill began receiving Social Security disability benefits in 1996. In April 2007, the Commissioner notified Rodysill that his eligibility for disability benefits had ended in July 2003 based upon his substantial work activity. The Commissioner subsequently issued a revised decision that Rodysill's benefits should have ended in June 2004. The Commissioner ordered Rodysill to repay the overpayment of disability benefits that he received between June 2004 and March 2007, which the Commissioner calculated to be $21,929.

Rodysill requested waiver of recovery of the overpayment. The Commissioner denied waiver of recovery and proposed that Rodysill make payments of $300 per month to repay the overpayment. Rodysill then requested and received a hearing before an administrative law judge ("ALJ"). Although the ALJ determined that Rodysill was not at fault in causing the overpayment, the ALJ denied waiver of recovery. The ALJ concluded that recovery of the overpayment did not defeat the purpose of Title II of the Social Security Act and was not against equity and good conscience. In finding that recovery of the overpayment did not defeat the purpose of Title II, the ALJ determined Rodysill's ability to repay the overpayment by considering the incomes and expenses of both Rodysill and his wife. Rodysill's financial reports showed that their household income exceeded their expenses by $970 in April 2009 and by $477 in April 2010. The ALJ also mentioned Rodysill and his wife's purchase of a home while his appeal was pending. The ALJ concluded, "Nonetheless, [Rodysill] and his wife still [] have some income each month that could be used for repayment." The ALJ also alluded to Rodysill's testimony that he would

be working more hours in the future. However, the ALJ did not adjust Rodysill's income due to this possible increase in income.

After the Appeals Council denied Rodysill's request for review, Rodysill sought review in the district court pursuant to 42 U.S.C. § 405(g). The district court concluded that substantial evidence supports the Commissioner's decision to deny waiver of recovery of the overpayment. Rodysill appeals.

## II. Discussion

We review *de novo* a district court's conclusion that substantial evidence supports the Commissioner's decision. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion." *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (alteration in original) (quoting *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010)). In determining whether substantial evidence supports the Commissioner's decision, we "'consider the evidence that supports the Commissioner's decision as well as the evidence that detracts from it.' We may not reverse the Commissioner merely because 'we would have come to a different conclusion.'" *Id.* (quoting *Kluesner*, 607 F.3d at 536) (internal citation omitted).

Whenever the Commissioner determines that an individual has received an overpayment of benefits, "proper adjustment or recovery shall be made." 42 U.S.C. § 404(a)(1). However, the Commissioner is not permitted to recover an overpayment of benefits "from[] any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." *Id.* § 404(b). An individual who has received an overpayment and who is without fault may request waiver of recovery based upon either of these prohibitions, 20 C.F.R. § 404.506, and in doing so, bears the burden of proof, *Sipp v. Astrue*, 641 F.3d 975, 981 (8th Cir. 2011).

-3-

Rodysill argues that recovery of the overpayment defeats the purpose of Title II of the Social Security Act. This occurs where recovery "deprive[s] a person of income required for ordinary and necessary living expenses," such as in "situations where the person from whom recovery is sought needs substantially all of his current income . . . to meet current ordinary and necessary living expenses." 20 C.F.R. § 404.508(a), (b); *see also id.* § 404.508(a) (explaining that "[t]his depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs"). As the ALJ observed, both of Rodysill's financial reports show that his household income exceeds his monthly expenses. Based upon this fact and the other evidence in the record, the ALJ determined that Rodysill does not need "substantially all" of his household income to meet ordinary and necessary living expenses.

Rodysill claims that the ALJ erred by including Rodysill's wife's income as part of the income available for repayment. This was improper, Rodysill argues, because he was not married when he received the disability overpayments. However, the procedures used by the Commissioner to process claims for Social Security benefits, which are termed the Commissioner's Program Operations Manual System ("POMS"), provide that a spouse's income is included when calculating the income available for repayment. Setting forth the Commissioner's policy for determining "income" and "ordinary and necessary living expenses," the relevant POMS guideline provides that the Commissioner "[c]onsider income to a spouse and dependents as being available to the person requesting waiver." POMS GN § 02250.120. This POMS guideline does not draw a distinction based upon marital status at the time that the individual received the overpayment. Accordingly, the Commissioner interprets the term "income" in 20 C.F.R. § 404.508 to include a spouse's income.

As an interpretation of a regulation promulgated by the Commissioner, the POMS control unless they are inconsistent with the regulation or plainly erroneous. *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 951 (8th Cir. 2004) (citing *Auer v.*

*Robbins*, 519 U.S. 452, 461 (1997)); *Gragert v. Lake*, 541 F. App'x 853, 856 n.1 (10th Cir. 2013) (unpublished). Rodysill does not dispute that the relevant POMS guideline specifies that his wife's income should be included when determining his ability to repay the overpayment. Nor does he contend that the POMS guideline is inconsistent with 20 C.F.R. § 404.508. Instead, Rodysill argues that, by including his wife's income when calculating the income available for repayment, the relevant POMS guideline is inequitable and effectively imposes a pre-marital debt on his wife. In support of this argument, Rodysill cites Nebraska law, which provides that "[m]arital debt includes only those obligations incurred during the marriage for the joint benefit of the parties." *Mathews v. Mathews*, 676 N.W.2d 42, 58 (Neb. 2004). However, by including the income of Rodysill's wife when calculating current income, the Commissioner is not seeking or securing a judgment against Rodysill's wife for the amount of the overpayment. Instead, the Commissioner is considering Rodysill's household income for the limited purpose of determining how much income is available for repayment. Based upon this record, we cannot say that the relevant POMS guideline is plainly erroneous. *See Reutter*, 372 F.3d at 951. The ALJ, then, did not err by considering Rodysill's wife's income in determining whether Rodysill was able to repay the overpayment.[2]

Rodysill also argues that the ALJ erred by considering his purchase of a home while his appeal from the denial of waiver of recovery was pending. While the ALJ acknowledged that Rodysill and his wife had purchased a home, the ALJ did not include Rodysill's home as a liquefiable asset that would be relevant to Rodysill's ability to repay the overpayment. *See* POMS GN § 02250.125 (noting that a "family home" is not considered an asset "which may be liquidated to repay an

---

[2]Even if the Commissioner did not include the income of Rodysill's wife when calculating current income, Rodysill concedes that, based upon his pro rata income and his share of household expenses, "at best he would be left with several hundred dollars per month." Thus, Rodysill admits that he would have excess income for repayment even without including his wife's income.

overpayment"). The ALJ simply explained that, even after purchasing a home, "[Rodysill] and his wife still [] have some income each month that could be used for repayment."

Rodysill also asserts that the ALJ should not have considered his testimony that he would work more hours in the future. The relevant regulation indicates that recovery defeats the purpose of Title II when recovery "deprive[s] a person of income required for ordinary and necessary living expenses," such as in "situations where the person . . . needs substantially all of his current income." 20 C.F.R. § 404.508(a), (b). The POMS provide that "[a]nticipated financial changes may . . . influence a person's ability to repay the overpayment, but they should be expected to occur within a few months of the date of the waiver decision and should be verified." POMS GN § 02250.115. Regardless of whether the Commissioner can consider an individual's potential for increased earnings in determining whether recovery defeats the purpose of Title II, the ALJ here merely mentioned Rodysill's prospect of working more hours in the context of making the point that Rodysill had a stable job. The ALJ did not give Rodysill's potential for increased earnings any further weight and did not adjust Rodysill's income based upon this possibility. Moreover, even without a potential increase in income, Rodysill's household income still exceeded his expenses by $970 in April 2009 and by $477 in April 2010. Accordingly, substantial evidence supports the Commissioner's conclusion that recovery of the overpayment does not defeat the purpose of Title II of the Social Security Act.

Rodysill next argues that recovery of the overpayment "would be against equity and good conscience." 42 U.S.C. § 404(b). The relevant regulation explains that recovery is against equity and good conscience if an individual:

> (1) Changed his or her position for the worse . . . or relinquished a valuable right . . . because of reliance upon a notice that a payment would be made or because of the overpayment itself; or

(2) Was living in a separate household from the overpaid person at the time of the overpayment and did not receive the overpayment.

20 C.F.R. § 404.509(a). The ALJ determined, and Rodysill does not dispute, that the circumstances described in § 404.509(a)(1) are not present here. Rodysill contends that § 404.509(a)(2) is applicable here because the Commissioner included his wife's income as part of the income available for repayment even though she did not receive the overpayments and was not married to him at that time. But the Commissioner is not seeking recovery of the overpayment from Rodysill's wife. Rather, the Commissioner is seeking recovery from Rodysill, the individual who received the overpayments. *See* 42 U.S.C. § 404(a)(1)(A) (authorizing the Commissioner to recoup overpaid benefits from the individual who received the overpayments). Section 404.509(a)(2) is therefore inapplicable.

Drawing on our opinion in *Groseclose v. Bowen*, 809 F.2d 502 (8th Cir. 1987), Rodysill next asserts that § 404.509(a) does not exhaustively list the circumstances when recovery is against equity and good conscience. In *Groseclose*, the Secretary of Health and Human Services sought adjustment of an individual's retirement benefits to recoup overpayments of insurance benefits that had been made to his daughter. *Id.* at 503. The father did not receive the overpayments or accept them on behalf of his daughter, was not at fault in causing the overpayments, and had no knowledge that his daughter was receiving the overpayments. *Id.* at 505-06. Even though the regulations did not specify that recovery in this circumstance was against equity and good conscience—as they do now—the *Groseclose* court determined that recovery from the father of the overpayments that were made to his daughter was against equity and good conscience. *Id.* at 506. Rodysill urges that recovery is against equity and good conscience because the ALJ considered his wife's income in determining his ability to repay the overpayment. However, "[t]he individual's financial circumstances are not material to a finding of against equity and good conscience." 20 C.F.R. § 404.509(b). Moreover, unlike *Groseclose*, the

-7-

Commissioner is seeking recovery from the individual who received the overpayments, thus minimizing the inequity that the court relied upon in *Groseclose*.

Rodysill further asserts that repayment is against equity and good conscience because he had no knowledge of the overpayments and because the overpayments were due to the negligence of the Commissioner. In essence, Rodysill equates the fact that the ALJ adjudged him to be without fault in causing the overpayments with the recovery of these overpayments being against equity and good conscience. However, the Social Security Act explicitly distinguishes between these two showings, specifying that there shall be no recovery of an overpayment "from[] any person who is without fault *if* such adjustment or recovery . . . would be against equity and good conscience." 42 U.S.C. § 404(b) (emphasis added). Accordingly, merely being without fault pursuant to § 404(b) does not render recovery of the overpayment against equity and good conscience. *See Coulston v. Apfel*, 224 F.3d 897, 900-01 (8th Cir. 2000) ("Our finding that [the plaintiff] was without fault does not automatically result in a victory for him. We must also determine whether repayment would defeat the purpose of providing social security to [him] or would be against equity or good conscience.").

Rodysill also argues that waiver of recovery is proper because he accepted the overpayments in reliance on representations made by the Commissioner. The relevant regulations provide that an individual is entitled to waiver of recovery if he "accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto." 20 C.F.R. § 404.510a; *see also id.* § 404.512(a) ("In the situation[] described in . . . [§] 404.510a, adjustment or recovery will be waived since it will be deemed such adjustment or recovery is against equity and good conscience."). In *Gladden v. Callahan*, 139 F.3d 1219 (8th Cir. 1998), we interpreted these regulations to provide that an individual is entitled to waiver of recovery of an

-8-

overpayment where he relied upon the statement of an ALJ in accepting the overpayment. *Id.* at 1220, 1223.

Relying on *Gladden*, Rodysill asserts that he notified the Commissioner of his work activity and that he accepted the overpayments because the Commissioner continued to provide disability benefits. However, accepting overpayments in reliance on the statement of an ALJ concerning one's continuing entitlement to disability benefits, as in *Gladden*, is entirely different from the situation present here, where Rodysill relied on the mere fact that the Commissioner continued to provide disability benefits. Indeed, the Sixth Circuit rejected an analogous argument in *Valley v. Commissioner of Social Security*, 427 F.3d 388 (6th Cir. 2005), where the plaintiff notified the Commissioner of his current work status and claimed that he accepted the overpayments because of letters that he received from the Commissioner. *Id.* at 390, 393. These letters, which accompanied his benefits checks, described his current benefits and informed him of increases in his benefits. *Id.* at 390. Interpreting § 404.510a, the Sixth Circuit reasoned, "Although the letters necessarily imply some interpretation of the Act and its regulations because they outline [the plaintiff's] entitlement to benefits and a benefits increase, they do not purport to make any explicit or specific interpretation." *Id.* at 393. The court further explained, "If these documents—obviously form letters—constituted official interpretation of the statute or regulations sufficient to trigger the good conscience exception to repayment, virtually every Social Security benefit recipient would be entitled to waiver of repayment assuming they received benefits of any kind and a letter describing those benefits." *Id.* We agree with the Sixth Circuit's interpretation of § 404.510a. Consequently, Rodysill's mere receipt of disability benefits after notifying the Commissioner of his work activity does not satisfy § 404.510a.[3] Substantial evidence

_____

[3]Rodysill further argues that he accepted the overpayments under § 404.510a because of conflicting written notices that he received from the Commissioner that informed him of overpayments and underpayments of disability benefits. However, Rodysill did not make this argument to the district court, and as such, the district

thus supports the Commissioner's conclusion that recovery of the overpayment from Rodysill is not against equity and good conscience.

## III.  Conclusion

Because the Commissioner's decision to deny waiver of recovery is supported by substantial evidence, we affirm.

_____

court did not consider whether Rodysill accepted the overpayments pursuant to § 404.510a because of these conflicting notices.  "[I]t is well established that, unless a manifest injustice would result, a claim not articulated to the district court is subject to forfeit on appeal." *Roberts v. Apfel*, 222 F.3d 466, 470 (8th Cir. 2000).  Because manifest injustice would not otherwise result, we decline to consider this argument made for the first time on appeal.